LOTTINGER, Judge.
This is an action for death benefits under the Louisiana Workmen’s Compensation Act. There is substantially no dispute as to the major portion of the facts surrounding this case. Curtis Trent, the deceased husband of the plaintiff, Pearl Anderson Trent, was employed by the Iberville Parish School Board as a teacher and athletic coach at Thomas A. Levy School in Rosedale, Louisiana, at wages which the defendant admits were of such an amount that 65% thereof exceeded $35.00 per week. On October 9, 1963, Curtis Trent and two other assistant coaches left the school at Rosedale and drove to Maringouin, Louisiana, for the purpose of permitting one of the assistant coaches to change clothes and drive to Baton Rouge with Trent and the other coach to attend a football game which was to be played that night at the Municipal Stadium in Baton Rouge. While in Maringouin, Trent and the two assistant coaches stopped at a bar and had several drinks, consuming a pint of Scotch whiskey between them. The three men then returned to the school where the two assistant coaches entered another automobile and commenced to follow Trent, who was driving his own automobile, to Baton Rouge. The evidence shows that the three coaches were going directly to the Municipal Stadium to scout the game.
While driving from Rosedale to the Municipal Stadium in Baton Rouge, Trent’s automobile was involved in an accident and he was instantly killed. His widow, the plaintiff herein, on May 5, 1964, filed the instant suit naming as defendant the appellant herein, Employers Liability Assurance Corporation, who was the Workmen’s Compensation insurer of the Iberville Parish School Board. In her petition, the plaintiff alleged that at the time of the accident she was married to, living with, and dependent upon Curtis Trent in the Parish of East Baton Rouge and that in addition thereto a minor child born to her and her husband, was well as two children of the petitioner by a former marriage were also dependent upon Curtis Trent for their support. She prayed for judgment against the defendant in the amount of $14,600.00, to be payable at the rate of $35.00 per week from the date of the accident, a penalty of 12%, plus attorney fees of $5,000.00. She alleged in substance that her late husband’s employment required that he make periodic trips in automobiles and therefore was hazardous within the intent and meaning of the Louisiana Workmen’s Compensation Act. She further alleged that the refusal of the defendant to commence payment of the weekly compensation benefits and to pay her the statutory allowance of $600.00 for funeral expenses had been arbitrary, capricious, and without justifiable cause, thus entitling her to recover from the defendant the 12% penalty and attorney fees provided for in the Workmen’s Compensation Act. The defendant answered the petition, denying every material allegation thereof, except that which alleged that Curtis Trent’s wages were of such an amount that 65% thereof exceeded $35.00 per week. They further stated in their answer that compensation payments had been refused
“because, under the circumstances and facts surrounding the death of Curtis Trent, respondent is not liable for compensation benefits.”
On August 10, 1964, plaintiff’s counsel served written interrogatories upon counsel for defendant, the last of which inquired of defendant as to whether or not they had communiciated to the plaintiff or anyone acting on their behalf their reason for not honoring the compensation payment in connection with the death of Curtis Trent.
*472 The defendant answered some of the interrogatories, objected to others, and answered the last interrogatory as follows:
“Although there have been no formal communications to plaintiff or her attorney regarding the reasons for refusing to pay compensation benefits in this claim, attorney for plaintiff is well aware that defendant has denied this claim because, among other reasons, the decedent, plaintiff’s alleged husband, had been drinking intoxicating beverages immediately prior to his demise and was not at the time engaged in the course and scope of his employment, since his employer, the Iherville Parish School Board, undoubtedly, does not hire its teachers or football coaches for the purposes of drinking alcoholic beverages in saloons or at other places, nor would any other sensible employer consider its employees carrying out his duties for which he was employed while proceeding to or from saloons to consume or after having consumed intoxicating liquors.”
The case was tried on .the merits on October 8, 1964, and the Lower Court rendered judgment, in behalf of the plaintiff, individually and for the use and • benefit of her three minor children, and against the defendant in the amount of $14,000.00 payable- at. .the rate of $35.00 per week from October 9, 1963, for a period of 400 weeks and also rendered judgment in favor of the plaintiff and against the defendant in the amount of $600.00 for the funeral expenses. The Lower Court rejected plaintiff’s demand for penalties and attorney’s fees. On October 30, 1964, the judgment previously rendered was signed and filed, and on November 10, 1964, the defendant was granted this suspensive appeal.
During the course of the trial, counsel for plaintiff strenuously objected to every effort on the part of the defendant to urge the intoxication of Curtis Trent as a defense to this action. He predicated his objection on the defendant’s failure to plead specially the alleged intoxication of Curtis Trent. The Lower Court sustained each objection of this nature made by counsel for plaintiff but allowed counsel for defendant to proffer such testimony. At the conclusion of the trial, counsel for plaintiff withdrew all prior objections which he had made to the introduction of evidence pertaining to the defense of intoxication, and we therefore have before us, as a part of the record rather than as a proffer, the complete transcript of testimony, including that with reference to the alleged intoxication of Curtis Trent.
We believe, as did the Lower Court, that there are two primary questions to be resolved. The first is the question of the intoxication of Curtis Trent, and the second is the validity of the defense asserted by the defendant that Curtis Trent was not in the course and scope of his enn ployment at the time of his death.
John D. Dickerson, one of the assistant coaches who was with Curtis Trent for a time immediately preceding the accident, testified that he, Emmett Follins and Trent left the school where they were employed immediately after football practice at about 5:30 P.M. They went to Marin-gouin, Louisiana where Dickerson lived in order that Dickerson might pick up some clothes, as he was going to spend the night in Baton Rouge at Follins’ house. Dickerson testified that before they got to his house in Maringouin, they decided that they were going to stop off at a bar in Maringouin. He stated that when they arrived at the bar, the three of them jointly contributed toward the purchase of a pint of Scotch whiskey, which the three of them then proceeded to consume together. Dickerson testified that together the three men drank the entire pint of whiskey before they left the bar, and that they drank nothing else. His testimony was that each of the parties' had two drinks out of the *473 bottle. Dickerson noticed no difference in Curtis Trent after he had consumed the alcohol and stated that he had ridden back with Curtis Trent to the school in Rose-dale, with Curtis Trent driving. He stated that Trent was driving normally, that the car remained on the right hand side of the road, and that it was not swerving. When Trent, Dickerson and Follins returned to the school at Rosedale, Follins and Dickerson got into Follins’ car and Trent left ahead of them, headed in the direction of Baton Rouge. Dickerson stated that he saw Trent’s taillights when Trent left the school, that they pulled out behind him and continued to follow him and noticed Trent’s taillights when he turned off the Rosedale highway onto an access road to Highway No. 190.
Emmett Follins testified to substantially the same facts as had been testified to by Dickerson. He also recalled the equal division of the pint of whiskey between the three men, and recalled that the last time that he had seen Trent’s automobile prior to the scene of the accident was when it turned off of the Rosedale highway onto the access road to U. S. Highway 190. He testified that Trent was about one mile ahead of his automobile and that no cars had at any time passed him after he left the school. He stated that he was driving about 50 or 55 miles an hour and was about a minute and a half or a little more behind Trent’s automobile. He testified that in his opinion Trent had complete control of his faculties.
Mr. Bill Adams testified on behalf of the defendant and stated that he was immediately behind the Trent vehicle at the time of the accident. Fie stated that the accident happened when Trent swerved from the inside of the two lanes on the east bound side of U. S. Highway 190 into the rear end of a truck which was in the outer lane. He estimated Trent’s speed at approximately 60 miles per hour and said that he had first seen Trent’s vehicle on the edge of Rosedale when Trent passed him and swerved in very sharply in front of him.' He stated that he continued to follow Trent’s vehicle from Rosedale to the scene of the accident and that during the entire interval between Trent’s having passed him and the time of the accident, Trent’s car was in his view. He testified that Trent would swerve sharply from one lane to another and that he continued to do this up to the time of the accident. Under cross examination, Mr. Adams stated that he could not say that Trent was under the influence of intoxicants at the time of the accident. The evidence indicates that Trent was driving a small Fiat automobile, that it was a windy day, and the road was rough.
Based upon the above facts, the Lower Court found, as a matter of fact, that Curtis Trent was not intoxicated at the time of the accident. LSA-R.S. 23:1081 provides that intoxication is a defense to a Workmen’s Compensation claim. This same section also provides that where intoxication is urged as a matter of defense, that the burden of proving the intoxication is upon the employer. It is not sufficient to simply establish that an employee may have been drinking before an accident, but it must be affirmatively shown that the employee was intoxicated. On the basis of this record, we find, as a matter of fact, as did the Lower Court, that Curtis Trent was not intoxicated at the time of the accident which caused his death.
Let us now consider the second basis for defense urged by the defendants namely, the allegation that Curtis Trent was not within the course and scope of his employment at the time of the accident. Mr. Edward S. Griffin, the principal of the Thomas A. Levy School where Curtis Trent was employed as a coach, testified that there were standing instructions issued to his coaches, and to other school personnel as well, to the effect that when any activity that they are associated with was happening in the area, they were to attend these activities “so as to get information”. He stated that Curtis Trent and the other coaches at Thomas A. Levy School attended *474 other football games being played in the area pursuant to those instructions, which instructions were delivered by him. He stated that the expenses of the coaches in attending the football games in the immediate vicinity were not paid by the school, but that transportation was paid only when the distance traveled exceeded SO miles. Mr. Griffin testified that Thomas A. Levy School did not compete with either McKinley or Scotlandville High Schools in 1963, these being the two teams that were playing in Baton Rouge on the night of October 9, 1963. When asked what interest he had in that particular game, since his school played neither of the teams, Mr. Griffin testified as follows:
“A. Well, as I aforesaid, whenever a team plays in the area, whether it is highschool, college or whatnot, then my coaches for any activities that we have as well as this instance, then he was instructed to go to the game, the coaches.
Q. It had nothing to do, did it, professor, with his coaching and the success of the team which he was coaching at T. A. Levy School ?
A. It did.
Q. In what way?
A. That’s where he went out to get pointers to see what other coaches do. What we try to do, even on our teaching staff we try not to get all the teachers from any one school. We have teachers from Grambling and teachers from Southern, we have teachers from Leland, we have teachers from Xavier, and now we have one I think from Virginia. What we try to do is get in all aspects of a program or what other people is doing, and that’s why I instruct them to go to these games.”
Mr. Griffin testified that in the various statements which he gave to different parties in connection wtih the accident, including one which wás given to an agent or employee of the defendant, he had disclosed the fact that he had instructed his coaches, and particularly, Curtis Trent, to attend this particular football game and that these statements were given within a week of the accident.
Mr. Griffin was recalled later in the trial as a witness in behalf of the defendant and at that time he stated that he had had occasion in the past to report to the superintendent of schools for Iberville Parish the fact that a member of the faculty had not performed the extra curricular duties expected of him and that the superintendent had replied that he would talk with the teacher and tell him that if the extra curricular duties were not performed that he would request that the School Board charge the teacher with neglect of duty.
John Dickerson’s testimony with reference to attendance at the football game-in question, as well as other football games, was as follows:
“A. Our policy was to, when we weren’t playing at home, to visit all the schools who were playing over here and see them play. Whether or not we were going to play them or not, we still were required to see them play because we didn’t know whether or not we were going to have to meet them at the end of the season.
Q. Did you * * * you say that was a requirement? Whose requirement was that?
A. Reqttirement by the principal.
Q. Did you and the other coaches from time to time attend other games in the area?
A. Yes, we did.”
Dickerson went on to say that the T. A. Levy School was not in any particular foot *475 ■ball league and while they did not have a ■scheduled game with either McKinley or Scotlandville High in 1963, that around the time of Trent’s death, they were in the process of trying to get a game with Scot-landville “for this coming year.” He further stated that Curtis Trent had been an assistant coach in the Allstar High School game in 1962 and that he would very likely have been selected to serve in that same capacity in 1963.
Emmett Follins’ testimony on that same point was as follows:
“Q. Now what was the policy of Thomas A. Levy School or the school board or whoever was acting in authority with reference to you and the other coaches attending various football games in the area at that time?
A. Whenever possible, when it didn’t conflict with our schedule, Mr. Griffin requested — that’s our principal — requested that we go scout other games. We also had tried to negotiate a game with Scotlandville and we thought it was a good time to scout them.”
Follins stated that Curtis Trent determined which games would be scouted and that whenever possible, those games were ones involving teams which Thomas A. Levy School was going to try to negotiate playing in the future. He further stated that Curtis Trent’s failure to attend various football games would probably have affected his salary, implying that Mr. Griffin would have reported this failure to the superintendent of schools.
We believe it to be the consensus of the testimony of the principal, Mr. Griffin, and the two assistant coaches, Mr. Fol-lins and Mr. Dickerson, that it was a matter of school policy that the coaches at Thomas A. Levy School scout other high school football games, particularly those involving potential opponents. We further believe that the preponderance of the evidence indicates that it was this school policy, as enunciated by the principal, and which was well known to both of the assistant coaches, that motivated Curtis Trent’s trip to Baton Rouge to watch or scout a football game which was taking place on the night of the accident. From the testimony of the principal it is evident that he had in the past taken certain disciplinary procedures with reference to other teachers who failed to perform the extra curricular activities which fitted their particular specialty, and we further believe that this policy with reference to extra curricular activity was the motivating factor in Curtis Trent’s attendance at the football game. Simply stated, it was quite probable that had Curtis Trent not attended this football game, that he would have been disciplined in some manner by his principal and/oi superintendent. For these reasons we concur and agree in the finding of fact by the Lower Court that Curtis Trent was in the course and scope of his employment at the time of his death.
We must next consider the question of the Lower Court’s failure to award the plaintiff penalties and attorney fees. We agree with the Lower Court that the fact that there were statements that were given to the defendant from several persons showing that the decedent had consumed a certain amount of alcohol, and that he had been driving in a suspicious manner, coupled with the genuine issue as to whether or not the decedent was actually within the course and scope of his employment was reasonable grounds for refusing to pay compensation.
The judgment of the Lower Court is therefore affirmed.
Judgment affirmed.