SEARCY INDUSTRIAL LAUNDRY, INC. *v.*
Sharon FERREN

CA 02-511                                              110 S.W.3d 306

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered April 30, 2003

*Huckabay, Munson, Rowlett & Moore. P.A.,* by: *Carol Lockard Worley,* for appellant.

*Davis & Mitchell, P.A.,* by: *Zan Davis,* for appellee.

K AREN R. BAKER, Judge. Appellant, Searcy Industrial Laundry, Inc., appeals a decision of the Workers' Compensation Commission finding that appellee, Sharon Ferren, proved by a preponderance of the evidence that she sustained a compensable neck injury, in addition to her admittedly compen-

sable low-back injury, arising from an incident that occurred on January 13, 2000. Appellant argues on appeal that there was no substantial evidence to support the Commission's decision that appellee's herniated disk in her neck was a compensable consequence of the lumbar-spine injury two-and-one-half months earlier. We disagree and affirm.

The parties stipulated to the fact that appellee sustained a compensable injury to her lower back on January 13, 2000. Appellee testified that on that particular date she was lifting a box when she experienced a sharp onset of pain "all over." She left work and sought medical assistance from Dr. Jim Citty. The next day, appellee returned to work to speak with the personnel manager, Karen Thomas. A Form 1A was filed, which reported a back injury. Appellee testified that she had never experienced pain in her back and neck before January 13 and that she told Dr. Citty from the beginning that she was experiencing pain "all over." Dr. Citty referred appellee to Dr. Williams at the Arkansas Neurosurgery Clinic. An initial MRI of the lumbar spine revealed a herniated disc at L4-5 with flattening of thecal sac and moderate impingement and a bulging disc at L5-S1 creating no significant compression. In a letter to Dr. Williams on July 3, 2000, Dr. Citty informed Dr. Williams of the date in which appellee complained of having chest-wall pain, and explained that his nurse had confirmed that appellee had previously complained of neck and upper thoracic pain on several occasions. Dr. Citty suggested a follow-up MRI on her cervical spine due to these complaints. The MRI revealed that there was indeed disc herniation at C6-7.

The Administrative Law Judge (ALJ) found that appellee had failed to prove by a preponderance of the evidence that she sustained a compensable injury to her cervical spine or neck. The ALJ specifically found that appellee failed to prove a cervical spine or neck injury arising out of and in the course of the employment, which was caused by a specific incident and was identified by time and place of occurrence. The Commission reversed the ALJ's decision. This appeal followed.

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission, and we affirm that decision if it is

supported by substantial evidence. *Campbell v. Randal Tyler Ford Mercury Inc.*, 70 Ark. App. 35, 13 S.W.3d 916 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mays v. Alumnitec, Inc.*, 76 Ark. App. 274, 64 S.W.3d 772 (2001). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999). In making our review, we recognize that it is the function of the Commission to determine the credibility of witnesses and the weight to be given their testimony. *Wal-Mart Stores, Inc. v. Stotts*, 74 Ark. App. 428, 58 S.W.3d 853 (2001). Furthermore, the Commission has the duty of weighing medical evidence and, if the evidence is conflicting, its resolution is a question of fact for the Commission. *Green Bay Packaging v. Bartlett*, 67 Ark. App. 332, 999 S.W.2d 695 (1999).

■ ■ On appeal, appellant asserts that the Commission erred in finding that appellee had proven by a preponderance of the evidence that she sustained a neck injury on January 13, 2000. As the claimant, appellee had the burden of proving a compensable injury by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4)(E)(i) (Repl. 2002). A "compensable injury" is one "arising out of and in the course of employment." Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2002). Arkansas Code Annotated section 11-9-102(4)(D) provides: "A compensable injury must be established by medical evidence supported by 'objective findings' as defined in subdivision (16) of this section." "Objective findings" are "those findings which cannot come under the voluntary control of the patient." Ark. Code Ann. § 11-9-102(16); *Carman v. Haworth, Inc.*, 74 Ark. App. 55, 45 S.W.3d 408 (2001). "In order to prove a compensable injury [the claimant] must prove, among other things, a causal relationship between his employment and the injury." *Wal-Mart Stores, Inc. v. Westbrook*, 77 Ark. App. 167, 171, 72 S.W.3d 889, 892 (2002) (citing *McMillan v. U.S. Motors*, 59 Ark. App. 85, 90, 953 S.W.2d 907, 909 (1997)). However, medical evidence is not required to prove the cause of an injury was work-related. *Wal-Mart Stores, Inc. v. VanWagner*, 337 Ark. 443, 990 S.W.2d 522 (1999).

Appellee testified that "when I first went and saw Dr. Citty on January 13, 2000, I told him how I was hurting. I did not really tell him I was having severe low back pain. I said that I was hurting all over. I was having low back pain, but I was hurting all over." She also testified that "[she] had never experienced any pain like [she] had in [her] back or [her] neck before January 13." In a letter to Dr. Williams on July 3, 2000, Dr. Citty explained that he felt it was necessary to proceed with an MRI of her thoracic and cervical spine as a result of her complaints of neck and thoracic pain. Specifically, in that letter, Dr. Citty wrote:

> In reviewing the records on Mrs. Sharon Ferren pertaining to her cervical and thoracic discomfort, we have one recorded episode in January on the 25th of her having check wall pain. My nurse confirms the fact that on several occasions there were complaints of neck and upper thoracic pain and this is alleged true by the patient. Primarily her symptoms have been referrable to the low back, however, I feel it is important to proceed with MRI studies of the thoracic and cervical spine referable to this injury.

The follow-up MRI of the cervical spine performed on July 11, 2000, showed a disc herniation at C6-7. Appellant argues that there was no evidence to support the Commission's decision, despite the foregoing facts. In its decision, the Commission relied on the following facts in support of its decision:

> In the present matter, the Full Commission reversed the Administrative Law Judge's finding that the claimant failed to prove by a preponderance of the evidence that she sustained a compensable injury to her cervical spine or neck on January 13, 2000. In this regard, Dr. Citty's contemporaneous medical reports might understandably have led the respondents to question the claimant's story that she was hurting over time in her neck, as well as her lower back after the incident. After all, Dr. Citty's several follow-up reports did not mention any ongoing neck complaints in the January through March period. Nevertheless, Dr. Citty's letter of July 3, 2000 to Dr. Williams should have cleared up any confusion on the respondent's part, since at that time, Dr. Citty corroborated that the claimant had been making neck complaints in his office.

> Furthermore, we note that Dr. Citty opined on July 3, 2000 that it was important to proceed with thoracic and cervical spine MRI studies referrable to the claimant's injury. Likewise, Dr. Williams rendered an opinion in a August 24, 2000 letter that the

lifting incident on January 13, 2000 caused the claimant's need for medical care at issue, assuming that he had an accurate medical history. Certainly, the claimant's medical records and testimony both appear to be consistent with the history described by Dr. Williams. In addition, we agree with the claimant's attorney that the respondents have failed to present any expert medical opinion, or other credible medical evidence, to rebut the explanation and opinion in Dr. Citty's July 3, 2000 letter, or to rebut the opinion in Dr. Williams' August 24, 2000 letter. Furthermore, we note that the claimant's alleged neck injury is supported by objective medical findings of a disc herniation at the C6–7 level of the spine.

■ Based on the Commission's credibility determination concerning appellee's testimony, the letter indicating that, although not recorded, appellee had previously made complaints regarding neck pain, and the MRI proving that appellee had in fact sustained an injury to her cervical spine, the Commission found that appellee had met her burden of proving by a preponderance of the evidence that she sustained a compensable neck injury in addition to her low–back injury in an accident on January 13, 2000. Because we cannot say that fair–minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission, we affirm.

GLADWIN, BIRD, and VAUGHT, JJ., agree.

NEAL and ROAF, JJ., dissent.

OLLY NEAL, Judge, dissenting. I write separately because I am not convinced that fair–minded persons with the same facts before them could have reached the same conclusions as the Commission. Appellee sustained a compensable injury to her back on January 13, 2000; subsequently, appellee sought additional medical treatment for a neck injury that she claims occurred at the same time as her back injury. Following her accident, appellee sought treatment from Dr. Jim Citty. Dr. Citty's medical notes indicate that on January 25, 2000, appellee's neck was normal. His notes also indicate that on February 16, 2000, appellee's neck was supple, *i.e.*, flexible, bendable, or pliable. The first documented record indicating appellee had complaints about neck pain is dated April 30, 2000, and in a letter dated July 3, 2000, Dr. Citty stated that his "nurse confirms the fact that on several occa-

sions there were complaints of neck and upper thoracic pain and this is alleged true by the patient." The letter does not provide any time frame for when these complaints might have occurred and does not state or even suggest that they occurred prior to April 30, 2000.

There is a conflict in the evidence and the Commission acknowledged this conflict when it stated the following:

> In this regard, Dr. Citty's contemporaneous medical reports might understandably have led the respondents to question the claimant's story that she was hurting over time in her neck, as well as her lower back after the incident. After all, Dr. Citty's several follow-up reports did not mention any ongoing neck complaints in the January through March period. Nevertheless, Dr. Citty's letter of July 3, 2000, to Dr. Williams should have cleared up any confusion on the respondents' part, since at that time, Dr. Citty corroborated that the claimant had been making neck complaints in his office.

I am mindful of the fact that the Commission has the duty of weighing medical evidence as it does any other evidence, and its resolution of the medical evidence has the force and effect of a jury verdict, *Wal-Mart Stores, Inc. v. Sands*, 80 Ark. App. 51, 91 S.W.3d 93 (2002), and that the Commission's findings are insulated to a certain degree from appellate review. *Tucker v. Roberts-McNutt, Inc.*, 69 Ark. App. 150, 12 S.W.3d 640 (2000); *Lloyd v. United Parcel Serv.*, 69 Ark. App. 92, 9 S.W.3d 564 (2000). However, its decisions are not, and should not be so insulated that it would make appellate review meaningless. *Tucker v. Roberts-McNutt, Inc., supra*; *Lloyd v. United Parcel Serv., supra*. Hence, I believe that this is one of those rare occasions where we should not defer to the Commission's resolution of conflicting evidence. I am convinced that fair-minded people with the same evidence before them as the Commission would not reach the same conclusions as the Commission and therefore I would reverse the Commission's award of benefits.

I am authorized to state that Judge ROAF joins in this dissent.