Tina ENGLE *v.* THOMPSON MURRAY, INC.
and Continental Casualty Company

CA 06-81                                                    239 S.W.3d 561

Court of Appeals of Arkansas
Opinion delivered September 20, 2006

*Bassett Law Firm LLP*, for appellant.

*Laser Law Firm, P.A.,* by: *Frank B. Newell,* for appellees.

TERRY CRABTREE, Judge. Appellant Tina Engle was injured on August 7, 2003, while she was attending an offsite work event. Her claim for benefits was denied by the administrative law judge (ALJ), who determined that appellant had failed to prove that she sustained compensable injuries as defined by Ark. Code Ann. § 11-9-102(4)(B)(iii) (Supp.2005) because she was not performing employment services at the time of her accident. The Workers' Compensation Commission affirmed and adopted the decision of the ALJ by an opinion filed November 30, 2005. Appellant challenges the decision of the Commission, and she argues that it was error for the Commission to hold that she was not performing employment services at the time of her injury. Further, she contends that the Commission's decision is not supported by substantial evidence. We reverse and remand the decision of the Commission.

At the time of her injury appellant was employed with appellee as the executive coordinator for Charlie Anderson, the vice-president of the account service department. Appellee Thompson Murray encouraged each department to have an offsite event annually or biannually to promote team bonding and to set goals for the department. As the executive coordinator, it was appellant's responsibility to plan the offsite event for the account service department. Appellant met with Mr. Anderson to determine where the event would be held, what presentations would be delivered, and in what activities they would engage. During this meeting they reviewed a document prepared by Mr. Anderson entitled "Needed for Account Management Offsite," which outlined the schedule, responsibilities, and activities planned for the two-day event.

The group was scheduled to meet at the office and the company-provided vehicles were to be loaded by 8:30 a.m. At 8:30 a.m., the group would watch a video of company CEO Andy Murray before departing from the office at 9:00 a.m. for Gaston's Resort and Bull Shoals Lake. The schedule prepared by Mr. Anderson reflects that from 12:30 p.m. until 6:30 p.m. the group was going to be on a pontoon boat and WaveRunners at the lake. More specifically, the schedule directs that appellant was responsible for directing the group to the dock, checking in at the dock, nominating a driver for the boat, and obtaining a map of the lake with directions to a beach and "cliff/rocks to jump off." Appellant was expected to keep the event running smoothly and handle unanticipated issues that might arise. Participation in the retreat was mandatory and participants were paid while attending the event.

On the morning of August 7, 2003, the group met, loaded the rented vehicles, and watched the video of CEO Andy Murray. In the video, Mr. Murray congratulated and thanked the team for their work over the past year. Mr. Murray encouraged the group to return with a refined sense of what it means to be a leader, to use the offsite event to "recharge," and "most importantly have fun." The group departed as scheduled and after arriving at Gaston's Resort they went to Bull Shoals Lake. Appellant obtained maps of the lake as instructed by her supervisor so that they could find rocks or a cliff to jump off into the lake. After locating a bluff from which others were jumping, Mr. Anderson and another member of the team, Molly Anders, jumped from the bluff. While attempting a jump, appellant fell from the edge striking the rocks protruding from the cliff face below.

In appeals involving claims for workers' compensation, we review the evidence in a light most favorable to the Commission's decision and affirm the decision if it is supported by substantial evidence. *Hapney v. Rheem Manufacturing Co.*, 341 Ark. 548, 26 S.W.3d 771 (2000). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Searcy Industrial Laundry, Inc. v. Ferren*, 82 Ark. App. 69, 110 S.W.3d 306 (2003). The court will not reverse the Commission's decision unless it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id*. When a claim is denied because the claimant has failed to show an entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of

review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Clardy v. Medi-Homes LTC Serv. LLC,* 75 Ark. App. 156, 55 S.W.3d 791 (2001).

In order for an accidental injury to be compensable, it must arise "out of and in the course of employment." Ark. Code Ann. § 11-9-102(4)(A)(i) (Supp. 2005). A compensable injury does not include injuries "inflicted upon the employee at a time when employment services were not being performed." Ark. Code Ann. § 11-9-102(4)(B)(iii). By adoption of the ALJ's opinion, the Commission reasoned that "employment services" are the activities and services "actually inherently necessary for the performance of the job for which the employee was hired. These activities must also either directly or indirectly advance the interest of the employer." Further, the Commission found that because appellant was not "expressly directed by her employer to attempt to jump from the cliff on Bull Shoals Lake" it is "obvious that this activity was neither directly nor indirectly necessary for her to perform her job duties." The Commission also held that the activity did not benefit the employer or advance its interests. We disagree.

An employee is performing "employment services" when he or she is "doing something that is generally required by his or her employer." *Pifer v. Single Source Transportation,* 347 Ark. 851, 69 S.W.3d 1 (2002). We use the same test to determine whether an employee was performing "employment services" as we do when determining whether an employee was acting within "the course of employment." *Id.* The test is whether the injury occurred "within the time and space boundaries of employment, when the employee was carrying out the employer's purpose or advancing the employer's interest either directly or indirectly." *White v. Georgia-Pacific Corp.,* 339 Ark. 474, 6 S.W.3d 98 (1999). The strict construction requirement of Act 796 does not require that we review workers' compensation claims and appeals as simply a matter of determining whether the worker was performing a job task when the accident occurred. *Wallace v. West Fraser South, Inc.,* 365 Ark. 68, 225 S.W.3d 361 (2006) (citing *Matlock v. Arkansas Blue Cross Blue Shield,* 74 Ark. App. 322, 49 S.W.3d 126 (2001)). Whatever "employment services" means must be determined within the context of individual cases, employments, and working relationships, not generalizations made devoid of practical working conditions. *Matlock, supra.*

█ Appellant was indeed acting within the course of her employment and providing employment services at the time of her

accident. The purpose of the offsite meeting was for employees to bond, refresh, set new goals, and have fun. As long as the participants were advancing the purpose of the meeting, they were furthering the interest of their employer. Moreover, because appellant was required to plan and facilitate the events, her job duties required an even more active participatory role. The company hosted the event, considered it mandatory, and paid employees to attend. Appellant's supervisor compiled a schedule and list of responsibilities for her that included renting a boat, WaveRunners, and obtaining a map that included the locations of cliffs and rocks to jump off. It defies reason to assert that appellant was required by her employer to find a place from which to jump, but was not expected to participate in jumping. The employer designated a block of time during which employees were expected to engage in activities at the lake. The record before us supports the assertion that appellant was engaging in conduct permitted and anticipated by the employer; therefore, it was erroneous for the Commission to conclude that appellant was not engaged in employment services because the employer did not expressly direct appellant to jump from the cliff. Because we find there was not a substantial basis for the denial of relief, we reverse the Commission's decision and remand for a determination of benefits.

Reversed and remanded.

ROBBINS, J., agrees.

GRIFFEN, J., concurs.

WENDELL L. GRIFFEN, Judge, concurring.

*"We should not forget as judges what we know as intelligent human beings."*
— *Matlock v. Arkansas Blue Cross Blue Shield,*
74 Ark. App. 322, 341, 49 S.W.3d 126, 140 (2001).

I write separately to state that employers and their carriers should fully expect workers' compensation law to cover injuries to employees on company retreats and similar outings. It is disingenuous for an employer to set up a company outing, require that its employees attend said outing, then refuse to compensate an employee for injuries sustained at the outing. The denial of benefits is more egregious in the present case because appellant was responsible for planning the very activity that led to her accident.

Put simply, employees may be engaged in employment services and covered under workers' compensation law even outside the confines of the actual workplace.

Recreational or social activities, such as company retreats, are within the course and scope of employment when "[t]he employer, by expressly or impliedly requiring participation, . . . brings the activity within the orbit of the employment." Arthur Larson, *Larson's Workers' Compensation Law*, § 22.01, at 22-2. As Professor Larson elaborates:

> The most direct way of associating the recreational or social activity within the employment is to make its performance an actual part of the job. As employment-related recreation and teams become more elaborately organized, a certain amount of work has to be done to keep the play going. So when an employer ordered the claimant to organize a ball team, he was held to have made that activity a part of his duties for which the claimant was employed. The same result was reached as to a trip by the captain of the bowling team to confer with the president of the league. Other examples of recreation-associated activities that are more like hard work to the actor would include those of a volunteer fireman who was injured putting up Christmas decorations or tending bar at an open house pursuant to orders of the firechief, of a country club corporation president participating in a fund-raising golf tournament and banquet, and of a football coach traveling to observe a football game in which his team was not playing.

Larson, *supra*, § 22.04[1][b], at 22-11–12 (footnote references omitted). Professor Larson references a number of cases in the above paragraph: *Higgins v. Ronkonkoma Fire District, Volunteer Fire Co.*, 439 N.Y.S.2d 459, 81 A.D.2d 721 (1981) (injuries suffered by a volunteer firefighter who had slipped and injured his wrist while acting as a bartender at a open house commemorating the district's seventy-fifth anniversary held to be compensable; the fire chief ordered the firefighter to be at the festivities in uniform and to act as a host); *Huber v. Eagle Stationary Corp.*, 4 N.Y.S.2d 272, 254 A.D. 788 (1938) (injuries suffered by an employee who was struck in the head with a baseball held to be compensable; the employee was ordered to organize and manage the team); *Highlands County School Board v. Savage*, 609 So. 2d 133 (Fla. Ct. App. 1992) (injury sustained by a teacher in a charity teacher-student basketball game to be compensable; the teachers were required to participate in the game as either

spectators or players held to be compensable); *Trent v. Employers Liability Assurance Corp.*, 178 So. 2d 470 (La. Ct. App. 1965) (holding that a football coach who was en route to a football game in which his team was not playing was engaged in employment services when school policy encouraged coaches to attend other games when they were free).

The instant case follows this established precedent. The cliff-jumping activity was contemplated by her employer and was specifically included as an activity. Appellant's direct supervisor was involved in the activity and encouraged her to participate. Appellant was expected to be an "employee" at the retreat. She was the coordinator for the entire event. She would have been required to resolve any issues at the office via cell phone. Her employer received a benefit by her attendance, as not only was she there in an effort to build team morale at the office, but she would have also been there (had she not been injured) to discuss the current and future status of her department. Out of the six factors this court outlined in *Matlock v. Arkansas Blue Cross Blue Shield*, 74 Ark. App. 322, 49 S.W.3d 126 (2001), five of them are applicable. Appellant was facilitating her employer's interests while at the retreat; she was engaged in an activity that was an expected part of her employment; the activity constituted a known (in fact, planned) departure from her work activities; she was compensated while at the retreat; and she would have been expected to cease what she was doing to advance employment objectives. In other words, appellant was clearly engaged in employment services at the time of her injury.

In *Matlock*, this court remarked, "We should not forget as judges what we know as intelligent humans." *Id.* at 341, 49 S.W.3d at 140. Company retreats and similar outings are a popular way of building morale at the workplace. Neither the Commission nor this court should endorse the argument that employees who participate in these activities, particularly when they are mandated by the employer, are not engaged in employment services when they are injured while at the activity. To decide otherwise not only goes against the law, but common sense as well.