HERITAGE BAPTIST TEMPLE and Utica National Insurance
Company *v.* Tammy ROBISON

CA 03–61                                            120 S.W.3d 150

Court of Appeals of Arkansas
Division III
Opinion delivered June 18, 2003

*Friday, Eldredge & Clark*, by: *Betty J. Demory* and *Amanda Capps Ross*, for appellant.

*Gary Davis*, for appellee.

JOHN F. STROUD, JR., Chief Judge. Appellants, Heritage Baptist Temple and Utica National Insurance Company, appeal the Workers' Compensation Commission's grant of benefits to appellee, Tammy Robison. On appeal, they contend that the Commission's determination that appellee sustained a compensable aggravation of her preexisting condition is not supported by substantial evidence. We affirm the Commission's decision.

Robison, a nursery worker in appellant Heritage Baptist Temple's day-care center, suffered an admittedly compensable injury on March 7, 2000, when she crawled under a baby bed to retrieve an object for a child. Robison testified that when she stood up, she had a lot of pain in her hip and down her leg. Although she mentioned it to her supervisor at the time, Robison

said that she did not think it was serious, and she did not seek medical treatment until almost two weeks later. On March 20, 2000, Robison saw Dr. Michael Sung, reporting pain in her right hip and leg, neck, and left shoulder. Dr. Sung treated Robison with medication, ordered x-rays, and scheduled an MRI. At follow-up visits on March 31 and April 4, Dr. Sung's notes indicate that Robison was still having lower back pain; he then referred her to Dr. Blankenship, an orthopedic physician. Robison saw Dr. Blankenship on April 7 and reported that she crawled under a crib and "twisted" her lower back. She also reported pain in her lower extremities. Upon examination, Dr. Blankenship diagnosed Robison with "acute lower back pain with tight lower extremity radiculopathy, possibly on a discogenic basis."

The MRI performed on April 12 was normal. Robison returned to Dr. Blankenship on April 13, and he ordered a triple-phase bone scan, which was performed on April 19. The bone scan found increased activity at the level of the anterior-superior iliac spine on the right, with increased uptake at the level of the right anterior-superior iliac spine. The bone-scan report from the radiographer stated that an avulsion injury of the sartorius was suspected. Robison returned to Dr. Blankenship on April 26, and he recommended an MRI of the right hip and right anterior-superior iliac crest area in light of the bone-scan findings. The second MRI, performed on April 28, found abnormal signal intensity within the anterior-superior margin of the right iliac bone involving the anterior-superior iliac spine. The report stated that the findings were worrisome for an intrinsic lesion near the anterior-superior iliac spine and recommended a CT scan of this region.

A CT scan of the pelvis/right hip was performed on May 12. This scan revealed a lytic lesion within the anterior aspect of the right iliac crest. Robison returned to Dr. Blankenship on May 15 with some slight tenderness in the anterior superior iliac spine area. In light of the results of the CT scan, Dr. Blankenship referred her to Dr. Berry Thompson, who examined her that same day. After examination and review of the medical reports, Dr. Thompson's impression was that the lytic lesion probably represented an enchondroma in the area of the anterior-superior iliac spine. In his letter of May 15, Dr. Thompson stated:

The increased uptake on the bone scan would suggest that she fractured into it at the time of her on the job injury. I believe that it does need excision by curettage for treatment and to confirm the diagnosis. It is my opinion that while the underlying lesion is not directly related to her on the job injury, the fracture into it is and this represents a pre-existing condition with an aggravation at work. The aggravation accounting [sic] for more than 50 percent of the problem and thus does qualify under workers' compensation laws to be covered.

Dr. Thompson performed surgery on Robison on July 31, 2000, and the biopsy revealed a benign bone tumor, a fibrous dysplasia, instead of a fracture. However, in his deposition testimony, Dr. Thompson stated that there had been ample time for a fracture to have healed. Although he did not see evidence of a healed fracture at the time of the surgery, he stated that the surgical findings did not change his opinion that the tumor was made symptomatic by Robison's work-related incident. He said that he would not expect a fibrous dysplasia to become symptomatic without some trauma.

Dr. Bruce Safman, an independent consultant, reviewed Robison's medical records and came to the conclusion that there was no supporting evidence in the medical records that any pathology to the anterior portion of the iliac crest occurred at the time of Robison's injury. However, upon review of Dr. Sung's notes, Dr. Safman conceded that he was unable to state whether Robison's condition was caused by the admittedly compensable injury:

Based on the lack of information in the notes, I have no basis on which to determine whether of not there was any iliac crest pain initially. It is not known whether Dr. Sung's reference to right "hip" pain referred to the iliac crest or not. Thus, I believe that we will have to accept the patient's verbalization that her symptoms are related to her initial injury, as there is no good documentation regarding the specific localization of her pain no [sic] the findings on her initial examinations between March 20th and April 4, 2000.

Our standard of review in workers' compensation cases is well-settled. We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commis-

sion's findings and affirm the decision if it is supported by substantial evidence. *Geo Specialty Chem. v. Clingan,* 69 Ark. App. 369, 13 S.W.3d 218 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Air Compressor Equip. v. Sword,* 69 Ark. App. 162, 11 S.W.3d 1 (2000). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Geo Specialty, supra.*

■■ "In workers' compensation law, an employer 'takes the employee as he finds him,' and employment circumstances which aggravate pre-existing conditions are compensable." *Nashville Livestock Comm'n v. Cox,* 302 Ark. 69, 73, 787 S.W.2d 664, 666 (1990). An aggravation of a preexisting noncompensable condition by a compensable injury is, itself, compensable. *Oliver v. Guardsmark, Inc.,* 68 Ark. App. 24, 3 S.W.3d 336 (1999). An aggravation is a new injury resulting from an independent incident. *Maverick Transp. v. Buzzard,* 69 Ark. App. 128, 10 S.W.3d 467 (2000). An aggravation, being a new injury with an independent cause, must meet the definition of a compensable injury in order to establish compensability for the aggravation. *Farmland Ins. Co. v. DuBois,* 54 Ark. App. 141, 923 S.W.2d 883 (1996).

■ Arkansas Code Annotated section 11-9-102(4)(A)(i) (Supp. 1999) defines "compensable injury" as

> An accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence.

A compensable injury must be established by medical evidence supported by "objective findings." Ark. Code Ann. § 11-9-102(4)(D). "Objective findings" are those findings which cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i).

Appellants argue that in the present case, no medical evidence of an injury was presented in connection with the bone tumor. In

support of their contention, they point to the deposition testimony of Dr. Thompson, who testified that such lesions become symptomatic when aggravated by a fracture or muscle loosened from the bone; however, he also testified that when he performed the surgery, he saw no evidence of a fracture or a healed fracture, or of torn or loosened muscle. They contend that Dr. Thompson's opinion that there was an injury was simply speculation and conjecture because he found no evidence of an injury while performing the surgery and because the surgery did nothing to repair any injury, but instead only removed the preexisting tumor.

Appellants also contend that the speculation of an injury stemmed from a positive bone scan, which Dr. Thompson testified usually indicated an injury. Appellants categorize the bone-scan results in this case as only indicating the lesion because no injury was seen by Dr. Thompson when he performed the surgery.

■ We disagree with appellants' contentions. Dr. Thompson testified in his deposition that the bone lesion was not the only objective finding, that there was a positive bone scan that he described as "hot," which showed an increased uptake; he stated that such a bone scan "suggested that if that was the major factor, that suggested it was an acute injury." Based upon this positive bone scan, Dr. Thompson determined that Robison needed surgery, and the surgery revealed that the bone tumor was benign. The positive bone scan is an objective medical finding of injury that was out of Robison's control, and it formed the basis for the recommendation of surgery. Furthermore, Dr. Thompson also testified that although he did not find evidence of a fracture or a healed fracture at the time he performed Robison's surgery, the surgical findings did not change his opinion that the bone tumor was made symptomatic by the work-related incident. We hold that substantial evidence exists to support the Commission's determination that Robison sustained an aggravation of her preexisting condition. Therefore, we affirm the award of benefits to Robison.

Affirmed.

NEAL and CRABTREE, JJ., agree.