Pearline WILLIAMS *v.* L & W JANITORIAL, INC, and
Cincinnati Insurance Co.

CA 03-681                                               145 S.W.3d 383

Court of Appeals of Arkansas
Division II
Opinion delivered February 4, 2004

[Rehearing denied March 10, 2004.]

George E. Pike, Jr., for appellant.

Frye & Boyce, P.A., by: Andy L. Caldwell, for appellee.

JOHN F. STROUD, JR., Chief Judge. Pearline Williams appeals from the denial of her claim for medical benefits and temporary total disability. She suffered a compensable injury to her knee while employed by her husband's janitorial company. Appellees paid for her first knee surgery, but refused to pay for a recommended second surgery to replace her right knee. For her sole point of appeal, appellant contends that the Commission "erred as a matter of law when [it] denied [her] medical benefits for a knee replacement and temporary disability following her severe twisting knee injury, which aggravated her preexisting arthritis." We reverse and remand for an award of benefits.

When a workers' compensation claim is denied, the substantial evidence standard of review requires us to affirm the Commission if its opinion displays a substantial basis for denial of the relief sought by the worker. *Stiger v. State Line Tire Serv.*, 72 Ark. App. 250, 35 S.W.3d 335 (2000). In determining the sufficiency of the evidence to sustain the findings of the Commission, we review the evidence in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Searcy Indus. Laundry, Inc. v. Ferren*, 82 Ark. App. 69, 110 S.W.3d 306 (2003). The question is not whether the

evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact or heard the case *de novo. Stiger, supra.* In making our review, we recognize that it is the Commission's function to determine the credibility of witnesses and the weight to be given their testimony. *Searcy Indus. Laundry, supra.* Moreover, the Commission has the duty of weighing medical evidence and, if the evidence is conflicting, its resolution is a question of fact for the Commission. *Id.*

Appellant testified that she is fifty-five years old and that she has worked for L & W Janitorial Service for about thirty years. She said that she wants to return to her job, but that in her present condition she is not able to continue that type of work. She explained that on November 15, 2000, she slipped on some stairs while she was working and hit her knee on the steps. She said that she saw Dr. Kenneth Martin and continued working until she had surgery on January 31, 2001. She testified that she has not returned to work because she is still having problems with pain and swelling in the knee. She said that in May, Dr. Martin recommended a total-knee replacement, but that she did not have the second surgery to replace the knee because workers' compensation denied coverage for it. She explained that after her injury in November and her surgery in January, her pain problems were much worse than they were before. She stated that she has never had any problems with her left knee.

Appellant explained that she first injured her right knee on July 9, 1996, when she slipped and fell on it at work. She said that she did not have any problems with it prior to that date. She stated that the July 1996 injury was the first injury she had to her right knee. She said that a 1988 injury was to the "upper part of her knee, up above the knee." She said it just "swelled up and then cleared up." She testified that before the November 2000 injury she would take Tylenol whenever she had severe pain in her knee and that she would still be working had it not been for that injury.

Dr. Kenneth Martin testified by deposition. He stated that his specialty is orthopedic surgery. He said that the first time he saw appellant was in December 2000, and that he did some X-rays, which showed "a lot of arthritis primarily over the lateral compartment and I described osteophytes, which are bone spurs, laterally and around the kneecap." He said that there was still a little bit of space between the bones. He said that he did a scope

and found out that "it was pretty much bone on bone." He said the arthritis that he saw in December 2000 would not have occurred between November 15, 2000 and the date of his examination. He explained that this type of arthritis is progressive and that the type of symptom you expect to see is primarily pain associated with some swelling and some grinding in the knee. He said that when the pain starts to interfere with daily activities, a surgical procedure is indicated.

Martin stated that appellant returned to him on January 9, 2001, and reported that the injections he had given her did not help a great deal. He said that he scheduled an MRI and that it indicated there was osteoarthritis involving the lateral compartment with subchondral bony necrosis, which means a loss of blood supply caused by arthritis, resulting in bone and knee joints starting to degenerate. He explained that there was also a tear involving the lateral meniscus and that he could not tell for sure whether the torn meniscus was caused by appellant's injury or was degenerative in nature. He recommended arthroscopy, hoping that "if we could debride the knee, remove the torn meniscus and smooth up the surfaces," she could have good enough function to avoid or at least delay a knee replacement. He said that when he got into her knee, he found "that the inside part of the medial compartment was in good condition. She had some mild degenerative changes around the kneecap but most of the findings were in the lateral compartment where she had the arthritis." He stated that he resected the tear in the lateral meniscus and that she also had what he would describe as grade-four changes, down to the bone, so that there was exposed bone on the tibia. He explained that there was no cartilage cushion there at all. He stated, "That's due to the degenerative arthritis and not coming from her injury on November 15."

Martin explained that in the following weeks, appellant experienced continued pain and that when he saw her on May 8, 2001, he thought she was a candidate for unicompartmental relief, a knee replacement or a partial-knee replacement. He said that unicompartmental relief replaces or resurfaces the joint, resurfacing the end of the femur with metal and the top of the tibia with plastic. He stated that he repeated the X-rays and that they showed there were significant degenerative changes laterally.

Martin testified that he agreed with Dr. James Mulhollan, whose medical evaluation he had read, that the grade-four osteoarthritis was not caused by the November 15, 2000 injury; that the "major reason" for doing that type of surgery would be her

preexisting arthritis; and that "most of the cause" for the knee replacement preexisted her job injury. He stated that in his opinion, within a reasonable degree of medical certainty, the surgery that he was recommending for appellant was related to the arthritis. He said that the torn meniscus was most likely related to the injury.

Martin reviewed appellant's 1996 X-rays and stated that he agreed that they were negative on the right knee, "not even any problems at all." He said that he agreed with Mulhollan's assessment that only the right knee had symptoms of arthritis and that therefore the right-knee arthritis was definitely related to an injury of some sort.

He said that "the injury had some effect on her knee" and that an injury can cause the symptoms to get worse. He said that if appellant was honest in saying that she was able to continue working up until the day she fell in November 2000, "that would be consistent with the fact that even though there were arthritic symptoms following the 1996 injury that it didn't affect her ability to work in that type job." He explained that the complicating factor in the discussion was appellant's arthritis and that her ability to work was materially affected by the November 2000 injury on the assumption that she was able to work and now she is not. He said that "the fall was a contributing factor to her occupational disability. The hard part is to say it's 50 percent because she had so much arthritis in the knee. There was a significant prior problem in the knee to begin with." He explained further:

> If she had just minor arthritis in a fall like this it wouldn't have been a big problem but because the arthritis was so severe, any little thing can just tip her over the edge. . . . I would like to help Ms. Williams as much as I can but there was such a significant amount of arthritis *I can't say in all certainty that the fall is more than 50%* because of the significant amount of arthritis already there.
>
> . . .
>
> Whether the fall was major contributing factor to her inability to work is where we split hairs. *Like you said, was the fall the straw that broke the camel's back, yeah.* You had this severe arthritis to begin with and if it weren't for the arthritis the fall would have been insignificant.
>
> If we assume that there was severe arthritis and that she had this severe fall and now she is unable to work, the fall contributed, but I can't say for sure it was more than 50%.

In response to your question whether it was a heavy contributing factor, *I state it was a factor. I'm not sure what you mean by heavy, but it was a factor, but I don't know if it was more than 50% because her arthritis was so bad that it would have taken anything minor just to tip her over the edge.*

(Emphasis added.)

Dr. Martin stated that the meniscal tear probably occurred with her injury, but that the arthritis did not. He said that "it was to some extent aggravated by the injury." He testified that there was "such a degenerative process that's been going on for some time I can't say the injury is responsible for all this problem now." He explained that injury can aggravate arthritis. He said that in his opinion, her arthritis preexisted the November 2000 injury; that her pain was aggravated by the fall; and that it was hard to say if a fall could cause the arthritis to get worse or to develop faster. He said that the symptoms get worse but that he could not say how much more degeneration there is just from the fall.

Dr. James Mulhollan testified by deposition. He stated that his orthopedic practice was limited to arthroscopic knee surgery. He said that he saw appellant for an evaluation on June 12, 2001; that the X-rays "showed basically arthritis," not in the rheumatoid sense, but a mechanical arthritis, the "wear and tear type thing" that takes years to develop. He said that if arthritis develops only in one knee, you have got to pretty well blame an injury or a mishap. He said that it would not be attributable to something that happened in the last five or six months because it takes longer than that.

Dr. Mulhollan further explained:

I don't think the grade 4 osteoarthritis was caused by her November 15, 2000 injury. I think she had to be arthritic at the moment of that injury. That opinion is strengthened if your history is correct as far as her last 3 or 4 years that she's had these problems. *If she had to have a total knee replacement the major cause of that would not be her November 15, 2000 injury, it's the underlying degenerative arthritic process.*

My answer is predicated on the knowledge of Arkansas' 50% law as it applies to Workers' Comp. That opinion is also strengthened by what you told me today.

(Emphasis added.) He went on to state:

We just deal with the complaint the patient gives. *If a patient has degenerative arthritic condition and they receive a severe injury to the knee, and it manifested itself in severe pain and swelling over an extended period of time, that accelerates the process.*

In order to explain that to the patients, *we say that's pouring kerosene on a fire. It just makes it you know burn quicker.*

*It is possible that if she had not had the injury that she had in 2000, that she would not have reached the condition where she needed surgery at that point.*

*It could certainly be a contributing factor if a person was able to work before the injury in the year 2000 and continued functioning and was working daily the same type of work she's been doing for years … and fell and injured her knee significantly and the condition she is in now, needing surgery. It could be a major contributing factor also.*

I think it would be giving a mishap like that more credit than it's due as to whether if she hadn't fallen and had that severe injury that she would still be working today.

. . . .

While I agree with Dr. Martin as far as the need for surgery, it is my opinion that it's due to the arthritic condition that's been going on for years. I said a total knee replacement is 40% and what I felt like she had from this injury was around 7%, 2% is for the torn meniscus that was removed by Dr. Martin.

(Emphasis added.)

The Commission affirmed and adopted the ALJ's opinion, in which the denial of benefits was based upon the following rationale:

Based on the expert medical opinions of Drs. Martin and Mulhollan I find the claimant has not met her burden of proof. *The recommended knee replacement surgery is not causally related to the compensable injury and therefore additional medical treatment at the respondents' expense is unreasonable and unnecessary.*

The evidence shows that the claimant suffered from severe preexisting degenerative arthritis in her knee prior to the compens-

able injury. *She was symptomatic prior to the incident at work and would have required knee replacement surgery regardless of the work-related injury due to the progressive nature of the disease.*

The respondents have fulfilled their obligation under Ark. Code Ann. § 11-9-508 by providing the claimant with adequate medical care immediately after her injury, access to diagnostic testing, and consultation with two specialists. *Both Dr. Martin and Dr. Mulhollan agree that the knee replacement surgery has been recommended to treat the preexisting arthritis, not the work-related injury.*

. . .

*There is no evidence that the degenerative disease was worsened by the work-related injury.* At the time of her injury, the claimant's condition was bone on bone — there was no cartilage left in her knee. There was nothing for the injury to aggravate, accelerate, combine with or worsen.

(Emphasis added.)

█ In workers' compensation law, an employer takes the employee as he finds him, and employment circumstances that aggravate preexisting conditions are compensable. *Heritage Baptist Temple v. Robison*, 82 Ark. App. 460, 120 S.W.3d 150 (2003). An aggravation of a preexisting noncompensable condition by a compensable injury is, itself, compensable. *Id.* An aggravation is a new injury resulting from an independent incident. *Id.* An aggravation, being a new injury with an independent cause, must meet the definition of a compensable injury in order to establish compensability for the aggravation. *Id.*

Here, there is no dispute that appellant's knee injury was compensable and that objective medical evidence established her current need for knee-replacement surgery. Rather, as noted by the dissenting Commissioner, "What is disputed is whether claimant's knee replacement surgery is reasonable and necessary in relation to her compensable injury given the fact that she also suffers from preexisting arthritis." The Commission determined that appellant failed to establish a causal connection between her compensable injury and her need for total-knee-replacement surgery. We are convinced that fair-minded persons with the same facts before them could not reach the same conclusion.

█ It seems clear that both Dr. Martin and Dr. Mulhollan were testifying under the mistaken belief that the knee injury had

to be the major cause of the need for the knee-replacement surgery in order for it to be covered by workers' compensation. The Commission recognized that any argument about whether the compensable injury was the major cause of the need for the knee-replacement surgery was misplaced:

> Although the parties questioned the doctors about "major cause," that analysis is used in gradual injury cases and in awards of permanent disability benefits. That argument is not applicable in the case at bar involving a specific injury and request for additional medical treatment.

*See also Farmland Ins. Co. v. DuBois*, 54 Ark. App. 141, 145, 923 S.W.2d 883, 885 (1996), in which we explained:

> Ark. Code Ann. §§ 11-9-102(5)(F)(i) & (ii) provide that when an employee is determined to have a compensable injury, the employee is entitled to medical and temporary disability as provided by this chapter. It goes on to specifically provide that if any compensable injury combines with a preexisting condition, *permanent benefits* shall be payable only if the compensable injury is the major cause of the *permanent disability or need for treatment*. Therefore, when a claimant who has sustained a compensable injury is seeking *permanent disability benefits* there is a requirement to prove that the compensable injury is the *major cause of the permanent disability. In this case, appellee was only seeking medical benefits and temporary total disability. Therefore, appellant's argument is misplaced.*

(Emphasis added.) Here, as in *Farmland, supra,* appellant thus far is only seeking medical benefits and temporary total disability. Thus, the major-cause analysis is not applicable. It is clear, however, that the doctors' mistaken notion about the need to establish the injury as the major cause for the knee-replacement surgery affected their testimony.

The medical testimony has been recounted at length earlier in this opinion. Both doctors can be fairly said to have testified that appellant's fall at work was not the major cause, but that it was, at least, a factor in her resulting inability to work and need for knee-replacement surgery. Consequently, this case does not involve conflicting medical evidence on those issues. Even so, however, "based on the expert medical opinions of Drs. Martin and Mulhollan," the Commission found that appellant had failed

to prove a causal connection between her compensable injury and her need for total-knee-replacement surgery. Moreover, the Commission concluded that "[t]here is no evidence that the degenerative disease was worsened by the work-related injury." Even reviewing the evidence in the light most favorable to the Commission's findings, we conclude that they are not supported by substantial evidence. Appellees had to take appellant as they found her, and the compensable injury that she suffered was a factor in her need for the additional surgery.

Reversed and remanded for an award of benefits.

HART and GLADWIN, JJ., agree.