BRANDON J. HARRISON, Judge
Marion Segars worked for Kiswire Pine Bluff, Inc., for twenty-five years before he filed a claim for a workplace injury. The claims process began on 4 November *412 2015, when Segars was testing a wire inside a test tube, fumbled the tube, and felt his arm pop while trying to save the tube from falling to the ground. He immediately reported the incident to his employer and received an x-ray the same day, which showed no acute injuries. A November 25 MRI showed a large rotator cuff defect, or full-thickness tear, in the infraspinatus tendon segment with retraction of the infraspinatus tendon. Dr. Bowen, the surgeon who repaired Segars's right shoulder, wrote, "I presume that since he [Segars] had no symptoms in his shoulder prior to his [November 4] injury that this was causative and is the reason for his current shoulder problem."
Segars had some prior issues with both shoulders. Dr. Bowen successfully repaired a left rotator-cuff injury two and a half years before the alleged workplace injury to his right shoulder. Segars's medical records revealed that in April 2013 he had complained to Dr. Bowen about pain in his right shoulder. Dr. Bowen noted that Segars might have a degenerative rotator-cuff tear in the right shoulder, that he had rejected treatment at that time, and that an MRI may be warranted if Segars's symptoms continued. By June 2013, Segars's right shoulder was reportedly "much better," and he did not seek further medical attention before the November 4 injury. Segars testified during the administrative hearing that his right shoulder was asymptomatic during this time. It is undisputed that Segars was taking prescription pain medication for unrelated chronic back pain when the November 4 workplace injury occurred. It is also undisputed that the only MRI of Segars's right shoulder was performed on 25 November 2015, which happened after the alleged workplace injury.
The administrative law judge found that Segars failed to prove a compensable right-shoulder injury. Reversing the law judge, the Arkansas Workers' Compensation Commission (Commission) found that Segars injured his right shoulder on 4 November 2015 while performing employment services. It cited the rotator-cuff tear on the November 25 MRI as objective evidence of the injury. After some discussion, the Commission credited Dr. Bowen's statement that the work-related incident caused the shoulder injury. It also awarded him temporary total-disability (TTD) benefits from 3 January 2016 to 20 September 2016. Kiswire, Pine Bluff Inc., and its insurance carrier Travelers Indemnity Co. (collectively Kiswire), challenge the Commission's decision. They argue that the Commission erred as a matter of law when it awarded medical benefits and TTD benefits. Kiswire also argues that the Commission's decision to award benefits is not supported by substantial evidence.
I. Medical Benefits Award
The Commission determines credibility, weighs the evidence, and resolves conflicts in medical testimony and evidence. Godwin v. Garland Cty. Landfill , 2016 Ark. App. 498, at 4, 504 S.W.3d 660, 662. We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. Parker v. Atl. Research Corp. , 87 Ark. App. 145, 189 S.W.3d 449 (2004). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. Id. The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission: if so, we must affirm. Parker v. Comcast Cable Corp. , 100 Ark. App. 400, 269 S.W.3d 391 (2007).
*413 A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D) (Repl. 2017). "Objective findings" cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16). There is no requirement that medical testimony be based solely or expressly on objective findings, only that the record contain supporting objective findings. Singleton v. City of Pine Bluff , 97 Ark. App. 59, 60, 244 S.W.3d 709, 711 (2006).
To prove a specific-incident injury, the claimant must establish that the injury was one "arising out of and in the course of employment." Ark. Code Ann. § 11-9-102(4)(A)(ii)(Repl. 2017). In Freeman v. Con-Agra Frozen Foods , our supreme court explained the causation requirement this way:
This court has never required that a doctor be absolute in an opinion or that the magic words "within a reasonable degree of medical certainty" even be used by the doctor. Rather, this court has simply held that the medical opinion be more than speculation. For example, in Howell v. Scroll Technologies , 343 Ark. 297, 35 S.W.3d 800 (2001), the opining doctor stated that his patient's exposure at work to a coolant mist was at least fifty-one percent the cause of her respiratory problems. We held that that opinion fell within the standard of a reasonable degree of medical certainty. Accordingly, if the doctor renders an opinion about causation with language that goes beyond possibilities and establishes that work was the reasonable cause of the injury, this should pass muster.
Freeman v. Con-Agra Frozen Foods , 344 Ark. 296, 303, 40 S.W.3d 760, 765 (2001).
An employer takes an employee as it finds him, and employment circumstances that aggravate preexisting conditions are compensable. Heritage Baptist Temple v. Robison , 82 Ark. App. 460, 120 S.W.3d 150 (2003). When a workplace injury aggravates a preexisting condition, then the aggravating injury is compensable. Oliver v. Guardsmark, Inc. , 68 Ark. App. 24, 3 S.W.3d 336 (1999). Of course, because an aggravation is itself a new injury with an independent cause, the alleged aggravating injury must itself meet the requirements for a compensable injury. Ford v. Chemipulp Process, Inc. , 63 Ark. App. 260, 977 S.W.2d 5 (1998).
Kiswire argues that the Commission did not identify any objective medical findings of a new injury (an aggravation) of Segars's preexisting right-shoulder condition. Kiswire believes the Commission acted unreasonably when it credited Dr. Bowen's causation statement because he incorrectly recited that Segars never had right-shoulder pain before he fumbled the test tube at work. In other words, Kiswire believes that Dr. Bowen's medical opinion on causation lacked the certainty that Arkansas law requires.
Here is what the Commission wrote on this point:
A review of the medical records reveals that there are no complaints of right shoulder pain after the single complaint on April 30, 2013. In his visits to his family doctor, Dr. Tracy Phillips, in 2014 and 2015, the claimant's only complaints of pain were for chronic back pain and an ingrown toenail. Dr. Phillips referred the claimant to the care of Dr. Christopher Mocek, a pain management doctor, for care of his chronic back pain. At his initial visit with Dr. Mocek on July 22, 2015, there is no record of the claimant complaining of right shoulder pain and the report of that date states regarding the musculoskeletal system, "[p]atient denies muscle weakness, muscle *414 pain, joint stiffness, joint pain, range of motion, swelling, arthritis." The claimant saw Dr. Mocek on October 23, 2015 and, again, there is no mention of any pain or problems with his right shoulder.
Consistent with the medical evidence, the claimant testified that after the transient pain he had in early 2013 resolved, he did not have any right shoulder pain until the work incident on November 4, 2015. After the short-lived problem with his right shoulder in 2013, the claimant continued to work for the respondent-employer, working twelve-hour shifts. Therefore, based on these facts, we find that Dr. Bowen's opinion regarding causation is credible despite the statement that the claimant had never had right shoulder pain.
We affirm the Commission's decision. Kiswire correctly notes that our supreme court has held that "expert opinions based upon 'could,' 'may,' or 'possibly' lack the definiteness required to meet the claimant's burden to prove causation pursuant to § 11-9-102(16)(B)." Frances v. Gaylord Container Corp. , 341 Ark. 527, 533, 20 S.W.3d 280, 284 (2000). See also Freeman , supra. But in those cases a medical doctor was asked to give a medical conclusion on causation in the form of a letter opinion. That was not the case here. Moreover, medical-opinion testimony is not essential to establish the causal relationship between the injury and a work-related accident. Wal-Mart Stores, Inc. v. VanWagner , 337 Ark. 443, 447, 990 S.W.2d 522, 524 (1999). The possible causes for work-related injuries include many that can be established by common-sense observation and deduction. Id. Unlike Kiswire, we do not read the Commission's opinion as solely relying on Dr. Bowen's statement. The doctor's clinical notes were just some of the evidence the Commission used to decide whether Segars's shoulder injury was work related.
The Commission was entitled to interpret the medical records. It gave more weight to Dr. Bowen's statement in 2015 that "I presume that since [Segars] had no symptoms in his shoulder prior to his [November 4] injury that this was causative and is the reason for his current shoulder problem" over his 2013 office notes in which he had an unconfirmed suspicion or concern that Segars might have a degenerative rotator-cuff tear in his right shoulder.
Some evidence suggested that Segars had a preexisting right-shoulder condition. But contrary to Kiswire's view, the Commission never found, as a matter of fact, that Segars had a preexisting right-shoulder condition. The evidence of a preexisting right-shoulder condition was that, in 2013, Segars reported to Dr. Bowen a one-time transient pain in his right shoulder; but he did not seek further treatment on that shoulder from Dr. Bowen, or any other practitioner. It was better by the next visit with Dr. Bowen. Segars also testified that he was asymptomatic and continued to work twelve-hour shifts at his job until the November 4 injury. Shortly after the November 4 incident, an MRI and related operative note showed that Segars had suffered an acute injury (tear) in his right shoulder, which is an objective finding. That the Commission identified Segars's prior left-shoulder surgery and ongoing lower-back pain, but did not conclude that he had an identifiable preexisting injury to his right shoulder before November 4, was a question of fact that the Commission could resolve in Segars's favor.
We hold that reasonable minds could have reached the Commission's conclusion and therefore affirm its decision that Segars suffered a compensable workplace injury on November 4.
*415 II. TTD Benefits
In between the November 4 injury and his surgery on January 13, Segars worked light duty in a sling for a short time; he was later taken off work because his job duties did not fit within his restrictions. After the January 13 surgery on his right shoulder, Segars was still not working. Records from Dr. Bowen indicate that he released Segars for light-duty work on April 7 with restrictions to "see how he does," and the doctor removed Segars from working on April 25 until his next appointment. While not crystal clear, it appears that Segars exhausted his Family and Medical Leave Act (FMLA) time, and his employment was terminated on 4 May 2016. He returned to Dr. Bowen for an appointment in September 2016. Segars testified during the administrative hearing that his shoulder had healed somewhat, but he was still not able to work a full twelve-hour shift due to his shoulder pain. During his deposition he admitted to not working anywhere since his employment with Kiswire ended.
A 20 September 2016 report mentions some pain relief and improved range of motion but continuing night pain and catching in the right shoulder. The September report notes weakness and decreased range of motion. In the report, Dr. Bowen advised that Segars may need periodic injections, repeat MRI scans, and a reverse shoulder replacement.
A TTD occurs when a claimant is within his or her healing period and suffers a total incapacity to earn wages. The healing period continues until the employee is restored as much as the permanent character of his or her injury will permit; the healing period ends when the underlying condition that caused the disability is stabilized and no additional treatment will improve the condition. Farmers Coop. v. Biles , 77 Ark. App. 1, 5, 69 S.W.3d 899, 902 (2002). The Commission determines as a matter of fact when the healing period has ended. Its decision will be affirmed on appeal if supported by substantial evidence. Id. The claimant's "failure to return to work must be causally related to the injury." Fendley v. Pea Ridge Sch. Dist. , 97 Ark. App. 214, 216-17, 245 S.W.3d 676, 677-78 (2006).
Here is what the Commission wrote as the basis for its TTD award:
In the present matter, the Full Commission has found that the claimant proved he sustained a compensable injury to his right shoulder on November 4, 2015. The claimant suffered a torn rotator cuff in his right shoulder. The claimant underwent surgery on January 13, 2016, and was removed from work. On April 7, 2016, Dr. Bowen released the claimant to return to work Monday, April 11, 2016, on light duty with the permanent restrictions of lifting up to his waist no more than 5 pounds on an occasional basis and no lifting his arms above his shoulder for any significant period of time. The claimant explained in his testimony that the respondent-employer considered his regular job a light duty position. However, the claimant's job duties did not fit within his permanent restrictions. Because the claimant was unable to perform his job, Dr. Bowen removed the claimant from work on April 25, 2016 "until next appt." The claimant returned to Dr. Bowen for his next appointment on September 20, 2016. There are no additional work excuses from September 20, 2016 or any subsequent dates. Therefore, we find that the claimant proved he is entitled to temporary total disability benefits from January 13, 2016 through September 20, 2016.
Segars's testimony and the medical records support the Commission's finding *416 that Segars remained in his healing period until 20 September 2016. Segars presented proof that his workplace injury, and the resulting surgical treatment, rendered him unable to perform any form of work for Kiswire within the restrictions set by Dr. Bowen. Dr. Bowen opined that Segars should remain off work until "his next appointment." The record shows that the next appointment was on 20 September 2016. We therefore hold that substantial evidence existed to support the Commission's TTD award.
Affirmed.
Virden and Klappenbach, JJ., agree.