MIKE MURPHY, Judge
Appellant Juan Cribbs appeals from the December 12, 2017 decision of the Arkansas Workers' Compensation Commission (Commission) that determined Cribbs was not entitled to additional medical treatment and that he was not entitled to temporary total disability. The Commission affirmed the decision of the administrative law judge (ALJ). On appeal, Cribbs argues that the Commission's decision is not supported by substantial evidence. We affirm.
On December 27, 2014, Cribbs, then fifty-five years old, suffered a compensable injury, primarily to his neck, while attempting to conduct a traffic stop in the scope of his employment for appellee City of Alpena. Cribbs worked part time as a patrol officer for the city of Alpena, and he also worked full time for the Carroll County Sheriff's Office as an assistant to the jail administrator. Because of the accident, his patrol car was totaled, and he was taken by ambulance to the hospital. Upon his *3 release from the hospital, Cribbs filed a workers' compensation claim with the City of Alpena through its carrier, appellee Municipal League WCT.
Following the wreck, Cribbs was under the care of several doctors. On January 2, 2015, Dr. Sherwood examined Cribbs and recommended Cribbs receive treatment in the form of physical therapy and medication. Six days later, Cribbs reported to his primary-care physician, Dr. Milam, who said he could return to work on January 12, 2015; however, Cribbs testified that he never returned to work for the City of Alpena. Dr. Milam prescribed physical therapy, requested an MRI, and recommended Cribbs seek a pain-management doctor. Cribbs began physical therapy twice a week for six weeks of treatments. On March 19, 2015, an MRI was taken of Cribbs's cervical spine, which revealed "multilevel degenerative changes." The next month, Cribbs met with Dr. Holt, who evaluated Cribbs and determined that a neurosurgical evaluation was not needed and that Cribbs should continue with conservative nonsurgical treatment. Around this time, Cribbs was directed to change his doctor to a workers'-compensation-approved physician, and he was referred to Dr. Lennard. On June 23, 2015, Dr. Lennard stated that Cribbs could return to work with restrictions. On August 18, 2015, a cervical myelogram was performed on Cribbs, which revealed degenerative-disc disease. On September 8, 2015, another doctor opined that Cribbs did not need a neurosurgical recommendation and that he should follow up with Dr. Lennard. Upon following up on December 14, 2015, Dr. Lennard reported: "[Patient] is doing quite well at this time. No additional treatment necessary. Full work release. Home exercises encouraged." A patient-work-status form indicated that Cribbs "[m]ay return to full duty without restrictions on: 12/16/15."
Following this release from Dr. Lennard, Cribbs was examined by a non-workers'-compensation doctor, Dr. Tadakal. Dr. Tadakal diagnosed Cribbs with cervicalgia (sharp pain in the neck region) on December 21, 2015, but released Cribbs to full-duty work without restrictions on January 21, 2016. From February through May 2016, Cribbs sought treatment with Dr. Pearce, a pain-management doctor, who assessed Cribbs with chronic-pain syndrome and degenerative-disc disease, among other things.
The ALJ conducted a hearing on May 31, 2017, whereupon Cribbs contended that he was entitled to additional medical treatment and temporary total disability (TTD) from December 17, 2015, to a date to be determined. The ALJ found that Cribbs did not prove he was entitled to additional treatment or benefits, so Cribbs appealed to the Commission. Regarding the additional medical treatment, the Commission found that Dr. Lennard's opinion that no additional treatment was necessary was entitled to significant evidentiary weight. Additionally, the Commission found that Cribbs's conditions of cervicalgia and chronic-pain syndrome as diagnosed and assessed by Dr. Tadakal and Dr. Pearce were not causally related to or aggravated by the December 27, 2014 compensable injury. Concerning the temporary disability, the Commission found that Cribbs did not prove he remained within a healing period for his compensable injury or was totally or partially incapacitated at any time after December 16, 2015.
Cribbs timely appealed the Commission's decision and now argues that substantial evidence did not support its finding that additional medical treatment was not reasonably necessary and that substantial evidence did not support its finding that Cribbs was not entitled to TTD.
*4 The standard of review in workers'-compensation cases is well settled. On appeal, this court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. Schall v. Univ. of Ark. for Med. Scis. , 2017 Ark. App. 50, at 2, 510 S.W.3d 302, 303. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. Id. The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission. If so, the appellate court must affirm. Id.
Cribbs first asserts that the Commission erroneously relied on Dr. Lennard's opinion that released him to full-duty work on December 16, 2015, because Dr. Lennard's December 14, 2015 opinion was that Cribbs should be released to only light-duty work. However, Cribbs fails to acknowledge the December 14, 2015 transcribed-office-clinic notes wherein Cribbs asserted "I'm a lot better" and Dr. Lennard reported "[patient] is doing quite well at this time. No additional treatment necessary. Full work release. Home exercises encouraged." Instead, Cribbs relies on a patient-work-status form to an employer that notes Cribbs may return to light duty. He claims that a nurse called him a couple days after the appointment and told him that there was nothing more Dr. Lennard could do for him and that he was being released to full-duty work. A corrected patient-work-status form indicated that Cribbs "[m]ay return to full duty without restriction on: 12/16/15."
The credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. Webster v. Ark. Dep't of Corr. , 2017 Ark. App. 558, at 3, 537 S.W.3d 731, 734. Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. Id. When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. Id.
Here, the Commission found that "Dr. Lennard's opinion that no additional treatment was necessary was entitled to significant evidentiary weight." This statement is supported by the December 14, 2015 office clinic notes in which Cribbs asserted, "I'm a lot better" and Dr. Lennard reported "[patient] is doing quite well at this time. No additional treatment necessary. Full work release. Home exercises encouraged." We defer to the Commission's authority because reasonable minds could reach this result.
Next, Cribbs asserts that the cervicalgia and chronic-pain syndrome from which he suffers are a direct result of the compensable injury. He explains that these diagnoses deal with pain in the neck region and that they are terms simply referring to what has already been deemed compensable-the neck injury. He contends that he never had any medical issues related to his neck until his wreck. He also relies on this statement to support his argument that his degenerative-disc disease should be covered because an aggravation of a preexisting condition is compensable.
Cribbs is correct in that a preexisting medical condition does not defeat a claim if the compensable injury aggravated, accelerated, or combined with the preexisting condition to produce the disability for which workers'-compensation benefits are sought. See Pulaski Cty. Special Sch. Dist. v. Tenner , 2013 Ark. App. 569, at 3. Stated differently, an employer *5 takes an employee as it finds him. Id. However, this is an issue on which we defer to the Commission.
Here, the Commission gave great weight to Dr. Lennard's opinion of "no additional treatment necessary." Additionally, the Commission gave great weight to the fact that two of Cribbs's doctors stated that a neurosurgical recommendation was not warranted and that he should continue with conservative treatment rather than surgery. The Commission explained that it found Cribbs's treatment following December 14, 2015, to be causally related to the cervicalgia and chronic-pain syndrome and that these conditions were not causally related to the compensable injury. Whether a causal connection exists is a question of fact for the Commission to determine. Id. Cribbs failed to prove that his treatment after December 2015 was for an aggravation of the compensable injury. He provided no diagnostic tests to show this nor did he provide a statement by a physician that his ongoing treatment was related to the compensable injury. Again, we defer to the Commission's authority, as it is better equipped to resolve conflicting opinions.
For his second point on appeal, Cribbs contends that he is entitled to continued TTD benefits stemming from his compensable injury. A TTD occurs when a claimant is within his healing period and suffers a total incapacity to earn wages. Kiswire Pine Bluff, Inc. v. Segars , 2018 Ark. App. 296, at 7-8, 549 S.W.3d 410, 415. The healing period continues until the employee is restored as much as the permanent character of his or her injury will permit; the healing period ends when the underlying condition that caused the disability is stabilized and no additional treatment will improve the condition. Id. The Commission determines as a matter of fact when the healing period has ended. Its decision will be affirmed on appeal if it is supported by substantial evidence. Id. The claimant's "failure to return to work must be causally related to the injury." Id.
Here, the Commission determined that Cribbs's healing period ended in December 2015 when Dr. Lennard released Cribbs to work without restrictions. Because we affirm that finding, we hold that Cribbs was not entitled to TTD benefits after that date.
Accordingly, on the facts of this case, substantial evidence supports the Commission's decision, and we affirm.
Affirmed.
Harrison and Hixson, JJ., agree.