Cite as 2022 Ark. App. 144

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-21-122

| | |
|---|---|
| PLANTERS COTTON OIL MILL, INC.; AG-COMP CLAIMS - SIF; AND DEATH & PERMANENT TOTAL DISABILITY TRUST FUND<br><br>APPELLANTS<br><br>V.<br><br>STEVEN NEWMAN<br><br>APPELLEE | **Opinion Delivered** March 30, 2022<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G703117]<br><br><br><br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Planters Cotton Oil Mill, Inc.; Ag-Comp Claims - SIF; and Death & Permanent Total Disability Trust Fund (collectively, the appellants) appeal a decision by the Arkansas Workers' Compensation Commission (the Commission) affirming an administrative law judge's (ALJ's) determination that appellee Steven Newman had proved that he sustained a compensable aggravation of a preexisting condition and was entitled to medical treatment and temporary total-disability benefits. Specifically, the Commission found that the medical treatment provided following Newman's February 22, 2017, compensable injury, including a total knee arthroplasty performed on Newman's left knee by Dr. Eric Gordon on July 20, 2017, was reasonably necessary and that Newman had proved that he was entitled to temporary total-disability benefits from July 20, 2017, through July 24, 2018. We affirm.

Newman, who is now approximately fifty-one years old, began working for Planters Cotton Oil Mill in December 2011. He was employed there as an electrical worker and general maintenance worker on February 23, 2017, when he fell off a ladder while installing insulation around a pipe at the plant. Newman injured his left knee and ankle in the fall.

Prior to the injury, in June 2012, Newman had an MRI on his left knee that showed (1) meniscal tears involving the medial and lateral menisci with a possible para meniscal cyst, (2) a mild increased signal in the proximal posterior cruciate ligament consistent with mild sprain, (3) a moderate-sized joint effusion, and (4) mild to moderate chondromalacic changes in the medial compartment and patellofemoral joint. On July 9, 2012, Dr. Torrance Walker performed "left knee arthroscopic subtotal medial and lateral meniscectomies" and a "left knee arthroscopic limited synovectomy" on Newman. He was diagnosed with a "left-knee medial meniscal tear, a left-knee lateral meniscus tear, and knee plica syndrome."

Dr. Tamer Alsebai assessed "Arthralgia of left knee" in December 2015. Also in December 2015, bilateral knee radiographs were taken that showed "mild degenerative changes in the medial compartment of both knees." Newman was seen on January 15, 2016, for complaints of pain in his right hip and right knee, and he was seen in March 2016 complaining of pain in his left knee. Newman was seen at Little Rock Diagnostic Clinic on September 9, 2016, complaining of "musculoskeletal pain." The records note that the pain was in his left knee and that Newman was experiencing upper-extremity numbness. A physical exam revealed crepitus (a grating sound or sensation) in Newman's right knee. The medical records also noted that Newman had a normal gait at the time. Dr. Alsebai assessed "bilateral primary osteoarthritis of knee." Newman testified that he did not have problems with his left

knee after March 2016. Newman was not actively undergoing treatment with any doctors for his left knee at the time of his injury nor was he having any problems with his left knee immediately before the fall from the ladder on February 23, 2017.

Following Newman's injury, Dr. Lester Alexander examined him on March 22, 2017, and diagnosed him with a "sprain of unspecified site of left knee, subsequent encounter." Dr. Alexander returned Newman to restricted work. An MRI of Newman's left knee was taken on March 29, that showed no evidence of acute fracture or acute bone-marrow injury but did reveal severe osteoarthritis, tears and degenerative changes of his meniscus, and small-joint effusion.

Dr. Eric Gordon evaluated Newman on April 25, 2017. In his notes, Dr. Gordon stated that Newman presented with left-knee pain that started with his fall from the ladder at work. Newman told Dr. Gordon that as he landed from the fall, he twisted his knee as it hyperflexed, and he came down with his weight on top of it. He had immediate pain in his ankle and was seen at urgent care. His ankle soon got better, but his knee did not. Newman's pain was mainly located on the medial side of his knee, was described as a moderate to severe aching and throbbing pain, and seemed to worsen with activity. The pain improved with ice and elevation. Treatment up to that point had included physical therapy, medications, ice, and elevation. Dr. Gordon noted that Newman had a history of left-knee arthroscopy with partial medial and lateral meniscectomies performed by Dr. Walker. Dr. Gordon noted that Dr. Walker's operative report and preoperative MRI report were both available for him to review. Dr. Gordon took x-rays, which showed narrowing of the medial joint space and osteophytes, findings that were compatible with osteoarthritis. Dr. Gordon also reviewed Newman's March

3

29 MRI along with the radiologist's interpretation. Dr. Gordon's assessment was that Newman's left-knee pain was due to a medial meniscus tear, a lateral meniscus tear, and exacerbation of Newman's osteoarthritis. Dr. Gordon compared the descriptions from Newman's previous arthroscopic surgery to Newman's most recent MRI and observed that he appeared to have retorn his medial meniscus in a similar location and sustained a new meniscus tear to the anterior portion of his lateral meniscus. Dr. Gordon's notes state that "the osteoarthritis has definitely progressed in the medial compartment since that time as well." Dr. Gordon concluded that it was reasonable to assume that the meniscal tears were the result of Newman's work injury, while the osteoarthritis was a preexisting condition. Dr. Gordon then stated in his notes that he planned to proceed with a left-knee arthroscopy with partial-medial and partial-lateral meniscectomies as well as chondroplasty. He noted that he had discussed with Newman the likelihood that Newman would "have some residual symptoms secondary to osteoarthritis and might have to have a knee replacement at some point in the future which would need to be filed under his regular medical insurance." In the meantime, Dr. Gordon continued Newman on light-work duty.

Dr. Gordon performed surgery on Newman's knee on May 8, 2017. The postoperative diagnosis was a left-knee medial meniscus tear and left-knee "arthritis/chondroplasty medial and patellofemoral compartments."

Dr. Gordon provided follow-up treatment after surgery. On May 17, 2017, Dr. Gordon noted that Newman "may return to work on 05/17/2017. Activity is restricted as follows: desk duties only." Newman was seen again at the clinic for a follow-up appointment on June 27, 2017, at which he reported that he continued to have persistent pain along the medial side

4

of his knee and that his pain was not much better. Dr. Gordon's assessment was that Newman's knee was healing but that the persistent pain was due to osteoarthritis. The doctor's notes go on to say that he discussed with Newman the fact that Newman's pain warranted proceeding with a knee replacement, which Dr. Gordon noted would have to be filed under Newman's regular health insurance rather than paid through his workers'-compensation claim. Dr. Gordon's notes further state,

> Therefore we will discharge him for his work injury. Patient has reached the point of Maximum Medical Improvement. Based upon the objective measures taken today and the American Medical Association guidelines to evaluation of permanent impairment, fourth edition patient has sustained a 2% impairment to the left lower extremity which translates to a 1% impairment to the whole person, Regular work duties, no restrictions.

It is not disputed that Newman's medical expenses and benefits were paid until June 28, 2017.

On June 28, 2017, Dr. Gordon did another "initial evaluation" on Newman, this time for his ongoing osteoarthritis. In his notes, Dr. Gordon stated that Newman was suffering from left-knee pain "which has been present for quite some time but has been worse lately." Dr. Gordon recounted Newman's previous arthroscopy with partial meniscectomy and noted that, after some initial improvement, Newman continued to suffer from persistent symptoms "related to advanced osteoarthritis involving the medial and patellofemoral compartments." Dr. Gordon assessed Newman's condition as "left knee pain secondary to osteoarthritis . . . . Symptoms are rather disabling and limiting for him." Dr. Gordon stated that "given the bone-on-bone arthritis in the medial compartment and the current symptoms with limited response to prior treatments," the plan was to proceed with a total knee arthroplasty on Newman's left knee. Dr. Gordon noted Newman could return to regular work duty with no restrictions.

Newman returned to work on June 28, 2017. Dr. Gordon saw him again on July 19, 2017, and noted "left knee pain secondary to osteoarthritis." Dr. Gordon performed a total left-knee arthroplasty on July 20, 2017, and the pre- and post-operative diagnosis was "left knee tricompartmental osteoarthritis."

Newman followed up with Dr. Gordon on August 2, 2017, at which time Dr. Gordon noted that Newman was almost two weeks out from surgery and reported that he was doing well overall with minimal pain and good progress. Dr. Gordon's records state that Newman was healing well, should continue with physical therapy, and should follow up again in four weeks. On August 30, 2017, Newman again followed up with Dr. Gordon. At that time, Newman was doing well but still reported some pain with activity and while at rest. He stated that he was improving. Dr. Gordon observed that Newman was doing reasonably well in his recovery, instructed him to discontinue physical therapy but continue exercises at home, and told him to follow up again in six weeks. Newman continued to do physical therapy and followed up in October 2017. At that visit, Dr. Gordon instructed Newman to cease physical therapy and advised him that he would continue to have pain and trouble kneeling but that he should continue to increase activity as he heals. Dr. Gordon advised Newman to remain off work and follow up again in six weeks.

Newman saw Dr. Gordon on November 29, 2017, and Dr. Gordon kept him "off work until further notice." Newman then followed up in December 2017 and April and July 2018. At the July visit, which was one year after his surgery, Newman reported that he was still having pain and had been falling more often. He also reported intermittent swelling with

6

activity. Dr. Gordon ordered a whole-body bone scan, which was done on July 27, 2018. The results of that scan revealed

> [a]bnormal uptake around the left knee arthroscopy on all 3 phases of the exam. This is nonspecific, as arthroplasty has only been present for one year. This could represent normal healing. However, loosening cannot be excluded. Infection is very unlikely as the angiographic phase only have very minimal increased uptake.

It also noted "degenerative changes in the right acromioclavicular joint, the thoracic spine, the lumbar spine, the right knee, both ankles, and both feet." Dr. Gordon advised Newman to continue with conservative management, including wearing a knee sleeve during activity, and to follow up in six months.

The appellants initially accepted Newman's injury as compensable and paid certain medical and indemnity benefits. They terminated benefits on June 8, 2017. Newman initiated this action seeking additional medical treatment and temporary total-disability benefits.

The parties deposed Dr. Gordon on January 30, 2019. Dr. Gordon testified that the February 22, 2017, compensable injury had caused "an exacerbation of osteoarthritis as part of his problem." He said, "I thought his fall probably irritated his arthritis." Dr. Gordon also said that Newman had experienced "fair" results from his total knee replacement and was not yet at maximum medical improvement.

There was a prehearing conference on October 1, 2019, and a prehearing order was filed the next day. In that order, the ALJ noted that by agreement of the parties, the issues to be litigated at the hearing were limited to additional medical treatment, additional temporary total-disability benefits, and attorneys' fees. All other issues were reserved. While Newman contended that the total knee replacement and temporary total-disability benefits should be covered, the appellants contended that they had paid all appropriate benefits and that the total

knee replacement and ongoing knee pain were due to Newman's preexisting arthritis and were unrelated to the compensable injury.

A hearing was held on December 13, 2019. Newman claimed that he was entitled to additional medical benefits and temporary total-disability benefits beginning July 20, 2017, until a date yet to be determined. He testified that he had not returned to work and that he suffered from chronic pain, swelling, and buckling of his left knee.

The ALJ filed an opinion on March 12, 2020. The ALJ found, among other things, that Newman had proved that he sustained a compensable injury that aggravated a preexisting condition. The ALJ awarded medical treatment and found that Newman was entitled to temporary total-disability benefits "from the day last worked, through the knee replacement surgery and follow-up visits until August 30, 2017." Both parties appealed to the Commission.

The Commission awarded medical expenses, temporary total-disability benefits (modified from the ALJ's award), and attorneys' fees. Specifically, the Commission noted that Dr. Gordon, when he first began treating Newman in 2017, assessed his condition as "[l]eft knee pain secondary to medial meniscus tear, lateral meniscus tear, *exacerbation osteoarthritis*." (Emphasis added by the Commission). The Commission stated that

> [t]he Full Commission recognizes that portion of Dr. Gordon's opinion that his treatment of the claimant beginning June 28, 2017 was causally related to a pre-existing osteoarthritic condition instead of the February 22, 2017 compensable injury. Nevertheless, it is within the Commission's province to weigh all of the medical evidence and to determine what is most credible. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999).

The Commission went on to explain that in the present case, it placed more weight on Dr. Gordon's initial finding that the injury exacerbated Newman's osteoarthritis than on the doctor's subsequent assumption that Newman's ongoing knee pain was not related to the

compensable injury. To support this, the Commission noted that Newman was not experiencing any active chronic knee pain prior to the injury, but he did experience a significant flare up of his arthritis symptoms following the injury. In light of this evidence and Dr. Gordon's initial assessment, the Commission found that the injury was at least a factor in exacerbating Newman's preexisting osteoarthritis. The Commission also found that the medical treatment of record provided by Dr. Gordon following the February 22, 2017, compensable injury, including the total knee replacement surgery performed on July 20, 2017, was reasonably necessary in accordance with Arkansas Code Annotated section 11-9-508(a) (Repl. 2012). The Commission found that Newman had proved that he was entitled to temporary total-disability benefits from July 20, 2017, through July 24, 2018, noting that he did not continue within a healing period for his scheduled compensable injury beyond July 24, 2018. It reiterated that it was making no finding as to permanent anatomical impairment. The Commission awarded attorney's fees to Newman's attorney. The dissenting Commissioner concluded that Newman had failed to prove that his osteoarthritis was aggravated by his work injury or that any irritation caused by his work injury was a factor in the need for his total knee replacement. This appeal follows.

The standard of review for appeals from the Commission is whether there is substantial evidence to support the Commission's opinion. *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 133, 84 S.W.3d 878, 881 (2002). Substantial evidence is relevant evidence that a reasonable mind might accept to support a conclusion. *Malone v. Texarkana Pub. Sch.*, 333 Ark. 343, 349, 969 S.W.2d 644, 647 (1998); *Collins v. Lennox Indus., Inc.*, 77 Ark. App. 303, 307, 75 S.W.3d 204, 207 (2002). While the Commission's decisions are insulated to a significant degree by a

9

deferential standard of review, its decisions are not beyond a meaningful appellate review. *Kimbell v. Ass'n of Rehab Indus.*, 366 Ark. 297, 304, 235 S.W.3d 499, 505 (2006). We will reverse the Commission's decision if we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions of the Commission. *Pulaski Cnty. Special Sch. Dist. v. Stewart*, 2010 Ark. App. 487, at 3, 375 S.W.3d 758, 760.

The appellants challenge the Commission's determination that Newman is entitled to additional medical benefits for the aggravation of his preexisting osteoarthritis, including his full knee replacement surgery performed by Dr. Gordon. They contend that decision was not supported by substantial evidence. "An employer takes the employee as he finds him, and employment circumstances that aggravate preexisting conditions are compensable." *Barber v. Pork Grp., Inc.*, 2012 Ark. App. 138, at 4. An aggravation is a new injury resulting from an independent incident, so it must meet the definition of a compensable injury in order to establish compensability for the aggravation. *Greene Cnty. Judge v. Penny*, 2019 Ark. App. 552, at 11, 589 S.W.3d 478, 486 (citing *Liaromatis v. Baxter Cnty. Reg'l Hosp.*, 95 Ark. App. 296, 236 S.W.3d 524 (2006)). A compensable injury must be established by medical evidence supported by objective findings, which are findings that cannot come under the control of the patient, such as complaints of pain or tenderness. *Id.* (citing *Ozark Nat'l Food v. Pierson*, 2012 Ark. App. 133, 389 S.W.3d 105). This means that an aggravation, being a new injury, must be evidenced by objective medical findings of a new injury to the preexisting condition. *Id.* (citing *Mooney v. AT&T*, 2010 Ark. App. 600, 378 S.W.3d 162). It is the injury for which appellant seeks benefits that must be supported by objective medical findings. *Id.*

However, while objective medical findings are required to establish the existence and extent of an injury, objective medical findings are not required to establish causation. *Id.* (citing *Vaughn v. Midland Sch. Dist.*, 2012 Ark. App. 344; *City of El Dorado v. Smith*, 2017 Ark. App. 307, 521 S.W.3d 523). Causation often comes down to a decision on the credibility of the claimant; medical evidence on causation is not required in every case. *Id.*

In this case, the Commission noted that the appellants stipulated that Newman's left-knee injury was compensable. The dispute revolves around whether Newman adequately proved that the compensable injury caused an aggravation of his preexisting osteoarthritis. Newman relies on *Arkansas Department of Human Services v. Shields*, 2018 Ark. App. 287, 548 S.W.3d 208, and *Saline Memorial Hospital v. Smith*, 2013 Ark. App. 29, which are both cases involving knee injuries that exacerbated preexisting chronic degenerative changes. The facts in *Smith* are remarkably like those in the present case. Smith suffered from preexisting osteoarthritis before she injured her left knee at work. The hospital accepted the injury as compensable and paid medical benefits and temporary total-disability benefits through December 21, 2010. A dispute arose, however, when Smith's treating physician recommended that she undergo a total knee replacement. The hospital terminated benefits, claiming that Smith's need for a left-knee replacement was the result of her preexisting arthritic condition and not related to her work injury. We affirmed the Commission's decision awarding Smith additional medical benefits, including the total knee replacement. Specifically, relying on *Williams v. L&W Janitorial, Inc.*, 85 Ark. App. 1, 9–10, 145 S.W.3d 383, 388–89 (2004), we held that Smith need not prove that her work injury was the major cause of her need for additional benefits. We held that the doctor's notes and testimony stating that the work injury

11

exacerbated Smith's preexisting osteoarthritis, combined with the fact that a total knee replacement had not been recommended prior to the injury, were sufficient evidence to support the Commission's decision.

In *Williams*, *supra*, there was testimony from two doctors that the claimant's fall at work was not the major cause but was at least a factor in her resulting inability to work and her need for knee replacement surgery. We reversed the Commission's denial of benefits and explained that an employee is not required to show that the aggravation of a preexisting condition is the major cause of the need for treatment when she is seeking medical benefits or temporary total-disability benefits; the "major cause" analysis "is used in gradual injury cases and in awards of permanent disability benefits." *Id.* at 10, 145 S.W.3d at 388; s*ee also Farmland Ins. Co. v. Dubois*, 54 Ark. App. 141, 145, 923 S.W.2d 883, 885 (1996) (holding that the "major cause" analysis did not apply because the "appellee was only seeking medical benefits and temporary total-disability.").

In the present case, our standard of review requires us to affirm because there was evidence to support the Commission's finding that Newman's work injury caused an aggravation of his preexisting osteoarthritis. Dr. Gordon's notes were contradictory, but they did include a medical assessment that Newman's fall aggravated his preexisting osteoarthritis. Questions regarding the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Bronco Indus. Servs., LLC v. Brooks*, 2021 Ark. App. 279, at 5–6, 625 S.W.3d 753, 757. While Dr. Gordon treated Newman under the assumption that Newman's preexisting osteoarthritis would fall outside the scope of his workers'-compensation claim, the Commission was not required to adhere to Dr. Gordon's

misapprehension of the law. Moreover, as in *Smith*, it is notable that Newman was not experiencing left-knee problems immediately prior to his fall, and his doctors had not recommended a total knee replacement before his work injury. Therefore, we cannot say that reasonable minds could not reach the conclusion, as the Commission did, that Newman's compensable injury aggravated his preexisting osteoarthritis.

We affirm.

GRUBER and HIXSON, JJ., agree.

*Friday, Eldredge & Clark, LLP*, by: *Guy Alton Wade* and *Phillip M. Brick, Jr.*, for separate appellants Planters Cotton Oil Mill, Inc.; and Ag-Comp Claims - SIF.

*Caldwell Law Firm, P.A.*, by: *Andy L. Caldwell*, for appellee.